ORAL ARGUMENT NOT YET SCHEDULED

_____

**Nos. 20-5271, 20-5273**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

I.A., *et al.,*

*Plaintiffs-Appellees*,

v.

MERRICK GARLAND, *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:19-cv-02530
Hon. Timothy J. Kelly

_____

**DEFENDANTS-APPELLANTS' MOTION TO DISMISS AND
TO VACATE THE DISTRICT COURT'S DECISIONS AND
ORDER GRANTING JUDGMENT TO APPELLEES**

_____

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellants-Defendants respectfully request that this Court vacate the district court's decision under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), and remand this case to the district court with instructions to dismiss both cases below.

This appeal involves two cases challenging an interim final rule, Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) (codified at 8 C.F.R. §§ 208, 1003, 1208). In a consolidated decision in both cases below, the district court set aside the interim final rule on notice-and-comment grounds. *See CAIR v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020). The United States filed a protective notice of appeal, and while appeal authorization was pending with the Office of the Solicitor General, a final rule was promulgated which superseded the interim final rule, and thus the case is now moot.

This Court should therefore apply the "established practice" in cases that become moot while on appeal: the Court should vacate the district court's judgment and remand the case with instructions to dismiss both cases. *Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018). By not granting vacatur here, the United States would be put in the position in future cases of having to delay issuance of a final rule pursuant to the Administrative Procedure Act (APA) just to keep a case live long enough to obtain appellate review to avoid the future legal consequences of a decision entered

by the district court, frustrating the administrative process. That is not what Congress intended, and therefore this Court should vacate the district court's judgment.

**BACKGROUND**

**Legal Background.** Congress has empowered the Attorney General and Secretary of Homeland Security to decide who may be admitted to this country as a refugee. 8 U.S.C. §§ 1101(a)(42), 1158, 1225. As a general matter, noncitizens located in this country have a right to apply for asylum. "Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival ...), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, [8 U.S.C. § 1225(b), which governs expedited removal of aliens]." *Id.* § 1158(a)(1). But a grant of asylum is discretionary. Asylum "*may* [be] grant[ed] to an alien who has applied," *id.* § 1158(b)(1)(A) (emphasis added), if the noncitizen satisfies certain standards and is not subject to a bar to applying for or establishing eligibility for asylum, *id.* § 1158(a)(2), (b)(1)(B), (b)(2). Additionally, "[t]he Attorney General [and Secretary] may by regulation establish additional limitations and conditions, consistent with this section [§ 1158], under which an alien shall be ineligible for asylum." *Id.* § 1158(b)(2)(C). Separate from the discretionary authority to grant asylum, the United States has a mandatory duty to provide two forms of protection from removal: withholding of removal (when a noncitizen faces a probability of persecution on a

protected ground in another country) and protection under the Convention Against Torture (CAT) (when a noncitizen faces a probability of torture in another country). *See* 8 U.S.C. § 1231(b)(3)(A) (withholding); 8 C.F.R. § 1208.16(c) (CAT).

**Joint Rule**. On July 16, 2019, the then-Attorney General and then-Acting Secretary of Homeland Security issued a joint interim final rule providing (with limited exceptions) that "an alien who enters or attempts to enter the United States across the southern border after failing to apply for protection in a third country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien transited en route to the United States is ineligible for asylum." 84 Fed. Reg. at 33,830. The Attorney General and Acting Secretary invoked their authority to establish "additional limitations … under which an alien shall be ineligible for asylum," 8 U.S.C. § 1158(b)(2)(C), and to impose "limitations on the consideration of an application for asylum," *id.* § 1158(d)(5)(B). *See* 84 Fed. Reg. at 33,830-31. The rule provided that noncitizens who are ineligible for asylum may still receive protections from removal if they establish a reasonable fear of persecution or torture. *Id.* at 33,834, 33,837-38.

The rule sought to discourage "asylum claims raised by those apprehended at the southern border [that] are ultimately determined to be without merit" and that impose a "strain on the nation's immigration system," "undermine[] many of the humanitarian purposes of asylum," have "exacerbated the humanitarian crisis of

human smuggling," and "affect[ ] the United States' ongoing diplomatic negotiations with foreign countries." 84 Fed. Reg. at 33,831. It sought to do so by "de-prioritizing the applications of individuals who could have obtained protection in another country" and "ensur[ing] that those refugees who have no alternative to U.S.-based asylum relief or have been subjected to an extreme form of human trafficking are able to obtain relief more quickly." *Id.* "[C]urrently more than 900,000 cases are pending before immigration courts," *id.* The rule attempted to combat that strain by "reducing the incentive for aliens without an urgent or genuine need for asylum to cross the border—in the hope of a lengthy asylum process that will enable them to remain in the United States for years, typically free from detention and with work authorization, despite their statutory ineligibility for relief." *Id.* The rule thus attempted to "mitigate[] the strain on the country's immigration system by more efficiently identifying aliens who are misusing the asylum system to enter and remain in the United States rather than legitimately seeking urgent protection from persecution or torture." *Id.* "Aliens who transited through another country where protection was available, and yet did not seek protection, may fall within that category." *Id.*

The rule was issued as an interim final rule, effective immediately during the comment period under the good-cause and foreign-affairs exceptions to the notice-and-comment and effective-date requirements of the APA. *See id.* at 33,840-41.

4

On December 17, 2020, the prior administration issued a final rule, adopting almost verbatim the interim final rule. *See* Asylum Eligibility and Procedural Modifications, 85 Fed. Reg. 82,260 (Dec. 17, 2020) ("final rule"). The final rule superseded the interim final rule on January 19, 2021.

**The *CAIR* lawsuit**. The day the interim final rule was published, two organizations that provide legal and social services to immigrants and refugees filed the *CAIR* lawsuit seeking immediate injunctive relief. After a hearing on Plaintiffs' motion for a temporary restraining order, the district court found that Plaintiffs had not met the "high standard" required to award relief. *See Capital Area Immigrants' Rights Coal.*, 2019 WL 3436501, at *1. Subsequently, Plaintiffs filed an amended complaint, adding nine individuals—J.M.M., D.L.R., Z.B.M., Y.G.C., M.Y.R.B., K.M.V.M., W.M.R.O., C.C.R.O., and N.G.R.L., and an additional organization—Human Rights First. *CAIR* Am. Compl., ECF 37.

**The *East Bay* lawsuit**. Another case, *East Bay v. Barr*, case no. 19-cv-4073-JST (N.D. Cal.), also challenged the rule. On July 24, 2019, the same day the district court announced its decision denying the TRO in the *CAIR* case, the Northern District of California issued a TRO enjoining enforcement of the rule nationwide, which was subsequently converted into a preliminary injunction. *See East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019). The government filed a notice of appeal with the Ninth Circuit and moved for a stay pending appeal,

5

which the district court denied. The government renewed its motion for a stay pending appeal in the Ninth Circuit. A motions panel denied the motion for a stay "insofar as the injunction applies within the Ninth Circuit, but granted the motion for a stay outside of the Ninth Circuit, because the nationwide scope of the injunction is not supported by the record as it stands." *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1016, 1028 (9th Cir. 2019). On August 26, 2019, the government applied for an emergency stay of that injunction in the Supreme Court. *Barr v. East Bay Sanctuary Covenant*, Supreme Court Case No. 19A230. The Supreme Court granted the stay, *see Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019). Later, on July 6, 2020, the Ninth Circuit upheld the district court's preliminary injunction, though the Supreme Court's stay of the injunction remained in place. *See East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 846 (9th Cir. 2020).

Earlier this year, after the issuance of the final rule, the district court in *East Bay* also enjoined the final rule. *See East Bay Sanctuary Covenant v. Barr*, No. 19-CV-04073-JST, 2021 WL 607869, at *1 (N.D. Cal. Feb. 16, 2021).

**The *I.A.* lawsuit**. Shortly after the Ninth Circuit first narrowed the injunction in *East Bay* to only apply within the Ninth Circuit, counsel in that case, on behalf of new plaintiffs—eight individuals and one organization—filed a new suit in D.C. district court. *I.A.* Compl., ECF 3. That same day, the *I.A.* Plaintiffs moved for a

preliminary injunction. *I.A.* Mot., ECF 6. Plaintiffs brought very similar but not identical claims for relief as in *CAIR*.

After the Supreme Court's stay of the injunction in *East Bay*, upon the parties' agreement, the district court converted the pending motions for preliminary injunction in both *I.A.* and *CAIR* into motions for summary judgment, and accepted supplemental briefing. *See* Minute Orders of September 18, 2019 (similar orders in each case).

**The decision below**. After a consolidated hearing on the motions in both cases, on June 30, 2020, the district court issued a consolidated decision vacating the interim final rule, holding that the government unlawfully promulgated it without notice and comment under the APA. *CAIR*, 471 F. Supp. 3d 25.

To start, the district court held that at least one organizational plaintiff possessed organizational standing. *Id.* at 37-38. In light of that determination, the district court did not rule on whether the individual plaintiffs had standing, and did not address the government's jurisdictional arguments for the individuals. *Id.* at 39-41. The district court held that CAIR and Tahirih Justice Center had satisfied the D.C. Circuit's standing requirements because the rule would require them to prepare for more labor-intensive reasonable-fear hearings instead of the credible-fear hearings given to those seeking asylum, which will reduce the number of clients that they serve. *Id.* at 42. The district court held that those harms "show that the Rule

both conflicts with these organizations' missions and inhibits their daily activities." *Id.* The district court rejected the government's argument that 8 U.S.C. § 1252(a)(5) and (b)(9) bar organizational plaintiffs from challenging the rule under the Immigration and Nationality Act (INA). *Id.* at 39-40. It also rejected the government's argument that Plaintiffs have no cognizable interest in the prosecution or non-prosecution of others, finding instead that the organizations challenged the government's procedures under the APA, not enforcement. *Id.* at n.9. The court also rejected the government's arguments that, because the organizations can continue to provide legal services, they have not suffered a harm sufficient to support standing and that their harms are speculative. *Id.* at 40-41. It recognized the "intuitive appeal" of the government's argument that these harms would allow "any legal services or advocacy organization [to] sue in federal court whenever there is a change in the law," but stated that the government's argument "would seem to all but preclude a legal services organization from ever proving standing. That cannot be so." *Id.* at 42.

The district court further held that organizational plaintiffs are within the INA's zone of interests. *Id.* at 43-44. It held that the organizations have "no trouble clearing" the zone-of-interests test's "low hurdle" because the INA contemplates pro bono legal services and requires that the Attorney General provide noncitizens notice of their right to counsel and a list of persons who would be willing to represent them. *Id.* It rejected the government's reliance on *INS v. Legalization Assistance Project*,

8

510 U.S. 1301 (1993) (O'Connor, J., in chambers), because, it held, this was just the opinion of a single Justice and the Supreme Court had taken a broader view of the zone-of-interests test. *Id*. The district court also distinguished *FAIR v. Reno*, 93 F.3d 897 (D.C. Cir. 1996), because the organization there could not point to any INA provision relating to its challenge regarding the regional impact of immigration. *Id.*

On the merits, the district court vacated the rule on the ground that the government had improperly invoked the good-cause and foreign-affairs exceptions to notice-and-comment rulemaking. *Id.* at 44-57. On good cause, the court recognized that "[c]ommon sense dictates that the announcement of a proposed rule may, at least to some extent and in some circumstances, encourage those affected by it to act before it is finalized." *Id.* at 46. But the court held that the record lacks sufficient evidence to justify these exceptions. It stated that the government's reliance on a "single newspaper article" detailing how smugglers may coach migrants to cross the border in relation to changes in the law as its "only specific evidence," "does not provide good cause to bypass notice-and-comment rulemaking procedures." *Id.* It stated that "other articles from the administrative record … either do not support, or even undermine," the government's surge prediction and the government offered "no other data or information that persuasively supports their prediction of a surge." *Id.* at 47. The court emphasized that it "does not suggest in any way that the Executive's broader security concerns that prompted promulgation

9

of the Rule were unfounded" but that the narrower question before the court—whether the government's surge predictions were supported by the record—was not entitled to deference under the de novo standard of review that applies in the D.C. Circuit. *Id.* at 47-48.

On foreign affairs, the court stated that it was a "closer call" and rejected the "definitely undesirable international consequences" test that other Circuits have applied. *Id.* at 51-57. It stated that that test "is unmoored from the legislative text." *Id.* at 53. The court recognized that "the foreign affairs exception plainly covers heartland cases in which a rule itself directly involves the conduct of foreign affairs," *id.* at 54, but concluded that the rule must involve a foreign-affairs "function" rather than a mere "effect[]" or "implication[]" to invoke the exception, and the rule here does so only "indirectly," which was insufficient. *Id.* at 55.

The district court set aside the rule in its entirety under the APA under *Nat'l Mining Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998), holding that remand without vacatur—or a stay in light of the Supreme Court's stay in *East Bay*—was not appropriate. *Id.* at 58-60. The government timely filed a protective notice of appeal. *See* Justice Manual § 2-2.132.[1]

---

[1] "If the time for appeal or cross-appeal is about to expire . . . and the United States Attorney has not received notice from the appropriate division of the Department as to whether an appeal is to be taken, a 'protective' notice of appeal should be filed in order to preserve the government's right to appeal." Justice Manual § 2-2.132.

# ARGUMENT

This Court should vacate the decisions below because the case became moot while on appeal. "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994); *see Munsingwear*, 340 U.S. at 39 (noting the "established practice" of "vacat[ing] the judgment below" when an appeal has "become moot" pending "decision on the merits"). Here, merits review of the district court's adverse decisions regarding the interim final rule is not possible because this appeal is moot following issuance of the final rule, and those decisions should be vacated under *Munsingwear*.

## A.    This Appeal Is Moot

The mootness doctrine requires that a live case or controversy "subsist[ ] through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," and the court can no longer provide any relief that could effectively

11

redress a party's claimed injuries or affect his rights. *Roane v. Leonhart*, 741 F.3d 147, 150 (D.C. Cir. 2014) (internal quotation marks omitted).

This case became moot while the government's appeal was pending. The final rule, which superseded the interim final rule that Plaintiffs challenged in both cases, issued in December 2020 and became effective in January 2021, after the district court's June 2020 judgment, and mooted this case. *See, e.g.*, *Natural Resources Defense Council v. United States Nuclear Regulatory Comm'n,* 680 F.2d 810 (D.C. Cir. 1982) (ruling that "[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue" and holding that promulgation of a rule in accordance with the APA's procedural requirements moots a claim that the same rule was previously promulgated without notice and comment); *American Federation of Government Employees, AFL-CIO v. Office of Personnel Management*, 821 F.2d 761, 766 n.4 (D.C. Cir. 1987) (challenge to certain provisions that were previously in effect "but have since been superseded by new regulations, is quite obviously moot"); *Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1432 n.27 (D.C. Cir. 1984), *opinion vacated upon reh'g* ("There is no question that a case can be mooted by promulgation of new regulations or by amendment or revocation of old regulations."); *accord Nat'l Mining Ass'n v. United States DOI*, 251 F.3d 1007, 1011 (D.C. Cir 2001) ("The old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed.

12

A new system is now in place. We therefore must vacate this aspect of the district court's decision as moot."). The fact that the final rule is very similar to the interim rule does not change this, because the district court set aside the interim rule on the basis of failure to follow notice-and-comment rulemaking—a process which the final rule went through.

Because it is no longer possible to enter an order providing Plaintiffs any of the relief they seek in the form of an order setting aside or vacating the interim rule, the case is entirely moot. *See Noble v. Sombrotto*, 525 F.3d 1230, 1241 (D.C. Cir. 2015) ("A case is moot if the judgment, regardless of which way it goes, will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.") (internal quotation omitted).[2] Given the existence of the final rule and the non-existence of the interim rule, a challenge to the final rule— which has already occurred in the *East Bay* litigation—would be the appropriate vehicle for adjudicating any of the legal issues presented in this litigation that might once again be raised. *See Sebelius*, 746 F.3d at 473; *but see Nat'l Mining Ass'n*, 251 F.3d at 1011 (describing limited situation where a statutory authority claim may not be moot).

---

[2] Moreover, it would be inappropriate to consider the merits of the final rule as part of this litigation at this juncture, even assuming the case is otherwise justiciable, as the merits of the rule have never been challenged by Plaintiffs here, let alone briefed by the parties in this case. Furthermore, review of a final rule involves a different administrative record.

No exception to mootness applies here. The exception to mootness for matters that are "capable of repetition yet evading review" does not apply. That exception applies only where "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Columbian Rope Co. v. West*, 142 F.3d 1313, 1317 (D.C. Cir. 1998) (quotation omitted). There is no realistic probability that the same parties could in the future be in a position to allege that they had been injured by the interim final rule, as it was set aside in this case and subsequently superseded by the final rule, which was then itself enjoined in the *East Bay* litigation. That chain of events does not establish "capable of repetition" because repetition is, at most, a "theoretical possibility." *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017).

The exception to mootness for a defendant's "voluntary cessation of allegedly illegal conduct" also does not apply here. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (quotation omitted). That exception rests on the understanding that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 285 n.1 (2001). This case does not involve a defendant's voluntary cessation of allegedly wrongful conduct. While it was the government's issuance of the final rule that has mooted the case, the final rule was issued in the normal course under the APA and not in any attempt to "manipulate

the judicial system." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351 (D.C. Cir. 1997). Rather, the government's appeal was "frustrated by the vagaries of circumstance." *Bonner Mall*, 513 U.S. at 25. Given the rulemaking regime directed by Congress in the APA—and followed here—this Court should treat this case differently from cases where an agency has "voluntarily ceased" its challenged conduct or has settled a controversy on appeal. Ruling that this case is now moot is consistent with this Court's practice in cases challenging agency rules. *See, e.g., Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 650 F. App'x 13, 14 (D.C. Cir. 2016) ("The challenges to the 2008 Rule raised by plaintiff on appeal … are moot because the 2008 Rule is no longer in effect. We therefore dismiss the appeal and vacate the judgment of the District Court."). This is not a case where an agency mooted a case to end litigation—indeed, litigation on the final rule continued in *East Bay*. Accordingly, the case is moot.

**B.    This Court Should Vacate the Rulings Below Under *Munsingwear***

Now that this case is moot, this Court should apply the normal practice in cases that become moot while an appeal is pending by vacating the judgment of the district court and the decision below, and remand with instructions to dismiss the cases below. The circumstances of this case strongly support vacatur.

When a civil case becomes moot while an appeal is pending, it is the "general practice" of this Court to vacate the unreviewed judgment granted in the court below

15

and remand the case to that court with directions to dismiss it. *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988); *see also Clarke v. United States*, 915 F.2d 699, 706 (D.C. Cir. 1990) (en banc); *Azar*, 138 S. Ct. at 1793 ("When a civil case from a court in the federal system . . . has become moot while on its way here, this Court's established practice is to reverse or vacate the judgment below and remand with a direction to dismiss." (internal quotation marks omitted)). This practice eliminates the unreviewed judgment which, if left on the books, might prejudice a party whose appeal was precluded due to the intervening mootness, thereby preserving "the rights of all parties." *Munsingwear*, 340 U.S. at 40. The "equitable remedy of vacatur ensures that 'those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review.'" *Camreta v. Greene*, 563 U.S. 692, 712 (2011) (quoting *Munsingwear*, 340 U.S. at 39). The vacatur rule serves important purposes: "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Bonner Mall*, 513 U.S. at 25. At the same time, "[v]acatur clears the path for future relitigation by eliminating a judgment the loser was stopped from opposing on direct review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (internal citation omitted).

That normal practice calls for vacatur here: this case became moot while on appeal, and the Court should apply the "established practice" of "vacat[ing] the judgment below and remand[ing] with a direction to dismiss." *Azar*, 138 S. Ct. at 1793. Given the equitable nature of vacatur, the case for applying that established practice is especially strong here. Absent mootness, this Court likely would have reversed the district court's decision and ruled in the government's favor. The administrative record establishes a sufficient justification for foregoing notice-and-comment rule making for the interim final rule, and the district court should not have set aside the rule on that basis after the Supreme Court allowed it to go into effect. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) ("The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusion."). Moreover, the Supreme Court explained in *Munsingwear* that "a judgment, unreviewable because of mootness," should not be permitted to "spawn[] any legal consequences." 340 U.S. at 41; *see Camreta*, 563 U.S. at 713.

Here, the district court also made significant rulings regarding justiciability. Because the government cannot appeal those rulings, if they are not vacated, other plaintiffs are likely to cite the decision to argue that any organization can block policies that it believes harms its mission. *See CAIR*, 471 F. Supp at 38-39. Broad

17

views of organizational standing present particularly acute issues in the immigration context because Congress has created a claim-channeling scheme and foreclosed review of the expedited removal system in significant ways. *See* 8 U.S.C. §§ 1252(b)(9), (e)(3). The district court also held on foreign affairs that this issue is a "close[] call" and noted that there is not much case law on the foreign-affairs exception. *CAIR*, 471 F. Supp. 3d at 51. Nonetheless, it created its own novel test, holding that a rule that applies within the United States may satisfy the foreign-affairs exception only if it involves a foreign-affairs "function," rather than merely having foreign-affairs effects. *Id.* at 52-56. This ruling has important practical implications because it limits agencies' ability to respond swiftly to immigration crises. *See Bonner Mall*, 513 U.S. at 25 (noting that "[a] party who seeks review of the merits of an adverse ruling" that is rendered moot "ought not in fairness be forced to acquiesce in the judgment.").

The Supreme Court's decision in *Board of Regents of the University of Texas System v. New Left Education Project*, 414 U.S. 807 (1973) (per curiam), is likewise instructive. *See* 13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.10.1 (3d ed. 2016 & Supp. 2021) (*Federal Practice & Procedure*) (discussing *New Left*). In that case, a state university's appeal of an injunction against the enforcement of two university rules became moot after the university repealed the challenged rules. *See New Left Educ. Project v. Bd. of Regents of the*

18

*Univ. of Texas*, 472 F.2d 218, 219-220 (5th Cir.), *rev'd*, 414 U.S. 218 (1973). The court of appeals refused to vacate the district court's judgment because the case had "become moot . . . through action of the appellant," *id.* at 221, but the Supreme Court summarily reversed, directing vacatur of the judgment. *See* 414 U.S. at 218. As one leading treatise has explained, vacatur was necessary to ensure that governmental and other parties would not be "deterred" from taking "good faith" actions that would moot a case by "the prospect that," if they do so, "an erroneous district court decision may have untoward consequences in the unforeseen future." *Federal Practice & Procedure* § 3533.10.1.

Finally, no exception to vacatur applies. There is an exception to vacatur when a party's own actions moot a controversy, but that exception does not apply here. *E.g.*, *Bonner Mall*, 513 U.S. at 25. As discussed above, this appeal was mooted because the government moved forward with issuance of a final rule, as provided for in the APA, not in any attempt to "manipulate the judicial system." *Nat'l Black Police Ass'n*, 108 F.3d at 351.

The determination whether to vacate a lower-court decision in light of mootness "is an equitable one," *Bonner Mall*, 513 U.S. at 29, that depends on what disposition would be "'most consonant to justice' . . . in view of the nature and character of the conditions which have caused the case to become moot," *id.* at 24 (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*,

19

239 U.S. 466, 478 (1916)). Here, that equitable inquiry calls for vacatur. In no sense does "justice . . . require" that DHS and DOJ continue to keep an interim final rule in place, merely to allow this appeal to proceed in order to avoid the future legal consequences of a decision entered by the district court. *Id.* at 21 (citation omitted). Moreover, additional equitable considerations apply where the movant is a government agency. *See Arevalo v. Ashcroft*, 386 F.3d 19, 20–21 (1st Cir. 2004). "Not only did [DHS] vigorously pursue its appeal but, as a repeat player before the courts, it is primarily concerned with the precedential effect of the decision below and has an institutional interest in vacating adverse rulings of potential precedential value." *Id.* (cleaned up). *See also Hassoun v. Searls*, 976 F.3d 121, 133 (2d Cir. 2020) ("government … has the same institutional interests that the First Circuit identified in *Arevalo.*"),

For these reasons, *Munsingwear* vacatur is warranted in this case. The Court should vacate the district court's decisions in favor of Plaintiff-Appellees, and remand with instructions to dismiss both cases.

## CONCLUSION

Because the case has become moot while on appeal, thus depriving the government of the opportunity to obtain review of the decision below, the

20

appropriate course is to vacate the district court's judgment and remand with

instructions to dismiss the case.

Dated: August 10, 2021                          Respectfully submitted,

                                                WILLIAM C. PEACHEY
                                                *Director*

                                                EREZ REUVENI
                                                *Assistant Director*

                                                */s/ Lauren C. Bingham*
                                                LAUREN C. BINGHAM
                                                *Senior Litigation Counsel*
                                                U.S. D.O.J., Civil Division
                                                Office of Immigration Litigation
                                                District Court Section
                                                P.O. Box 868, Ben Franklin Station
                                                Washington, D.C. 20044
                                                Phone: (202) 616-4458
                                                Lauren.C.Bingham@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

> /s/ Lauren C. Bingham
> LAUREN C. BINGHAM
> *Senior Litigation Counsel*
> U.S. Department of Justice
> Civil Division
> Office of Immigration Litigation
> District Court Section

22

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27 because it contains 4993 words. This motion also complies with the typeface and the type-style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
